NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2021*
Decided May 6, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1806

| | |
|---|---|
| RICKY J. DARROW,<br>*Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 19-CV-797 |
| CONNIE PUTLAND and<br>WILLIAM SMITH,<br>*Defendants-Appellees*. | Nancy Joseph,<br>*Magistrate Judge*. |

**O R D E R**

The University of Wisconsin-Whitewater fired Ricky Darrow from his custodial job after coworkers reported his racist and vulgar comments. Darrow administratively appealed the University's decision to no avail and then sued University administrators in federal court, alleging retaliation, discrimination, and denial of due process. The district court dismissed all claims but the due-process claim and later entered summary judgment for the defendants. Darrow appeals the entry of summary judgment on his

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

due-process claim and argues that the district court never fully assessed his retaliation allegations. But the University gave Darrow notice and an opportunity to be heard before it fired him, and the retaliation allegations are legally insufficient, so we affirm.

A coworker complained about Darrow to a supervisor. That coworker, who was Mexican, wrote that he felt unsafe because Darrow had made offensive comments to him about Mexicans. The supervisor sent the complaint to Connie Putland, a human-resources officer. Putland contacted Darrow, who had "permanent status" in his job and could be fired only for just cause, WIS. STAT. § 230.34(1)(a), and placed him on administrative leave pending an investigation. When they met two days later, Putland read the complaint to Darrow and allowed him to offer reasons why he should not be disciplined for violating the University's policy prohibiting offensive language. Darrow named other coworkers as "character references" who could assure Putland that he was a good employee. Putland interviewed those coworkers, but they reported more offensive comments Darrow had made to and about female coworkers and non-white, disabled, and female students. Based on these reports, the University fired Darrow.

Darrow appealed the University's decision to the Wisconsin Employment Relations Commission, a state agency that resolves claims of wrongful discharge of state employees. At the hearing, Darrow argued that the coworker who reported him had fabricated the complaint, but he did not respond to the other allegations that he had used offensive language. Darrow cross-examined Putland, his supervisor, and the coworker who reported him, and he filed a post-hearing brief. After receiving these materials, the hearing examiner affirmed the University's decision to fire Darrow. Darrow did not appeal that decision in state court. *See* WIS. STAT. § 227.52.

Darrow next turned to the federal court for relief. He filed suit under 42 U.S.C. § 1983 against the University, coworkers, and administrators. As relevant to this appeal, Darrow raised two claims. First, he alleged that the defendants denied him his job without due process when they fired him. Second, he asserted that, by firing him, the defendants violated the First Amendment, because in his view the firing was retaliation for his comments to coworkers and for filing an unrelated complaint months earlier against an employee for "bullying." A magistrate judge, presiding by consent, screened the complaint, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and dismissed all claims except the due-process claim. On Darrow's retaliation claim, the court explained that the First Amendment did not protect his comments to fellow workers (whether offensive or not) because they did not cover matters of public concern. Later, the court entered summary judgment against Darrow on his due-process claim because he conceded that, before he

was fired, Putland read the complaint to him and gave him a chance to tell his side of the story; furthermore, Darrow had a full hearing after he was fired and chose not to appeal the adverse decision in state court.

In this appeal, Darrow argues that the district court erred in entering summary judgment because the University's procedures did not satisfy due process. We review an entry of summary judgment de novo, *Kvapil v. Chippewa Cnty., Wis.*, 752 F.3d 708, 712 (7th Cir. 2014), and we conclude that the district court properly entered summary judgment on Darrow's due-process claim. The parties stipulate that, before Darrow lost his job, due process entitled him to notice of the charges against him, an explanation of his employer's evidence, and an opportunity to tell his side of the story. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

The record contains no dispute about the process that Darrow received before his discharge. *See Kvapil*, 752 F.3d at 712. Darrow has acknowledged that Putland read him the complaint, told him about the comments that he had made about Mexicans, gave him the opportunity to dispute that evidence, received from him the names of coworkers who he said could "vouch" for him, and then contacted those employees for more information.

Moreover, this procedure gave Darrow all the pre-discharge process that he was due. *See Loudermill*, 470 U.S. at 546. Darrow argues that, before he was fired, he deserved a written copy of the charge against him and the chance to cross-examine his coworkers about their reports. But oral notice, which he received, satisfies due process, and a full hearing with cross-examination is not required if, as here, the public employee receives that opportunity after he is fired. *See id*. at 546–47. Darrow received that precise opportunity (and more) at the post-discharge hearing before the Commission: He presented evidence, cross-examined witnesses, including the coworker who initially reported him, and filed a post-hearing brief. True, he chose not to avail himself of additional procedures (i.e., appealing that decision in state court), but his acquiescence does not mean that the process was unavailable.

Finally, Darrow unpersuasively argues that the defendants unlawfully retaliated against him for comments he made to fellow workers and for filing a complaint about bullying against an employee "only months" before the University fired him. Public employers may not discharge employees for protected speech, but the First Amendment does not protect workplace speech about a "purely private interest." *Garcetti v. Ceballos*, 547 U.S. 410, 419, 421 (2006); *Bivens v. Trent*, 591 F.3d 555, 561

(7th Cir. 2010) (citation omitted). Darrow does not offer any evidence that his private remarks to fellow employees (whether they violated workplace rules or not), or his complaint that someone at work bullied him, were matters of public, as opposed to personal, interest. Thus, even if we assume that the defendants fired him because of those personal matters, Darrow's claims could not proceed under a First Amendment theory. *See Trent*, 591 F.3d at 561. In any event, the record conclusively establishes that the defendants fired Darrow because he violated a workplace policy, the validity of which he does not contest, forbidding offensive language.

We have considered Darrow's remaining arguments, and none has merit.

AFFIRMED